UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDY BOUCHER and LEON A. KING II <br><br> Plaintiffs <br><br> v. <br><br> CITY OF WORCESTER, BAHAMA BOB'S WORCESTER, INC., PETER TOWLER, DANIEL DOWD, THOMAS DOWD, THOMAS DUFFY, EDWARD McGINN, MOORE, THOMAS, FALCONE and ORTIZ, <br> Defendants | CIVIL ACTION NO. <br><br> 04-12673 REK <br><br> RECEIPT # _____ <br> AMOUNT $ 150.00 <br> SUMMONS ISSUED _____ <br> LOCAL RULE 4.1 _____ <br> WAIVER FORM _____ <br> MCF ISSUED _____ <br> BY DPTY. CLK. M.F. <br> DATE 12/21/04 |

MAGISTRATE JUDGE MBB

**COMPLAINT & JURY DEMAND**

**INTRODUCTION**

1. This is an action for money damages brought against the City of Worcester, Bahama Bob's Worcester, Inc., and Worcester police officers Peter Towler, Daniel Dowd, Thomas Dowd, Thomas Duffy, Edward McGinn, officers Thomas, Falcone, Ortiz, and Sergeant Moore for violations of the plaintiffs' constitutional rights and for state torts.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. §§1331 and

1343 provide federal-question jurisdiction, and 28 U.S.C. §1367 provides supplemental jurisdiction over the state law claims.

**PARTIES**

3. Plaintiff Randy Boucher was at all times material to this complaint a resident of the Commonwealth of Pennsylvania.

4. Plaintiff Leon A. King II was at all times material to this complaint a resident of the Commonwealth of Pennsylvania.

5. Defendant City of Worcester ("City") is a Massachusetts municipal corporation located in Worcester County, Commonwealth of Massachusetts. The Worcester Police Department ("WPD") was at all times relevant to this complaint a department of the City of Worcester.

6. Defendants Peter Towler, Daniel Dowd, Thomas Dowd, Thomas Duffy, Edward McGinn, Moore, Thomas, Falcone, and Ortiz were at all times relevant to this complaint employed as police officers by the WPD and acting under color of state law. They are sued in their individual capacities.

7. Defendant Bahama Bob's Worcester, Inc. ("Bahama Bob's") is a Massachusetts corporation, with a principal place of business at 23 Foster Street, Worcester, MA 01608. On December 22 and 23, 2001, Bahama Bob's was doing business as A-MEN.

**FACTS**

8. On December 22, 2001, plaintiffs drove from their home in Philadelphia, Pennsylvania, to Massachusetts to visit family over the Christmas holiday.

9. Mr. King and Mr. Boucher decided to go to the A-MEN night club in Worcester. They drove to the A-MEN, where they arrived at approximately 10:30 p.m.

10. On the night of December 22 through the morning of December 23, 2001, Worcester police officer Peter Towler was working a private paid detail at the A-MEN. He was wearing his WPD uniform, badge, and department-issued gun, and he was exercising his powers as a Worcester police officer.

11. Defendant Bahama Bob's employed defendant Towler, an off-duty Worcester police officer, for a private detail at the A-MEN nightclub. Defendant Towler was working under Bahama Bob's supervision at the A-MEN on December 22 and 23, 2001.

12. Mr. King and Mr. Boucher spent most of the evening dancing on the second floor of the A-Men. At approximately 1:00 a.m. on December 23, they went to the first floor to sit and relax for a while before leaving.

13. Later, Officer Towler appeared on the first floor yelling in an out-of-control, loud and unprofessional manner to everyone in the area, telling them to get out of the establishment because it was closed.

14. Plaintiff King looked at his watch. It was 1:50 a.m. Plaintiff King stood up and put his sweater on in preparation to leave. Plaintiff Boucher was finishing the drink he had just ordered. Other patrons were still present in the bar at this time.

15. Moments later, Officer Towler returned to the first floor. He stood directly between plaintiffs King and Boucher. He began yelling at them that it was time to leave. Officer Towler knocked Boucher's drink out of his hand, and it fell over on the bar. Officer Towler then grabbed Mr. Boucher's shoulder with one hand and pulled out his police baton with the other.

16. Plaintiff King yelled to the police officer, protesting his conduct.

17. Officer Towler violently shoved Mr. King, and Mr. King fell to the floor.

18. Then defendant Towler knocked Mr. Boucher to the floor, and began to kick and hit him.

19. Several additional Worcester police officers arrived at the A-MEN. Upon information and belief, these officers were Daniel Dowd, Thomas Dowd, Thomas Duffy, Edward McGinn, Moore, Thomas, Falcone and/or Ortiz.

20. These additional officers acting jointly handcuffed Mr. King as he lay on the floor face-down.

21. While Plaintiff King was lying on the floor in handcuffs, he asked the officers for their names. Instead of providing their names, the officers kicked Mr. King in his side.

22. Defendant Towler kicked Mr. Boucher while the other officers were present.

23. Neither plaintiff Boucher nor plaintiff King had done anything to provide the defendants with probable cause to make an arrest. Nor had they physically resisted or assaulted the defendants. The force used against them was unnecessary, unreasonable and excessive.

24. After a few minutes, the officers took both plaintiffs outside of the A-MEN club and placed them into a patrol wagon.

25. Two other individuals, Richard Tousignant and Brandon Blair were arrested and placed in the patrol wagon, as well. Mr. Tousignant had voiced his opposition to the defendant police officers' mistreatment of plaintiffs King and Boucher inside the establishment. Mr. Blair had complained about the fact that the police cars prevented him from moving his car.

26. Upon information and belief, WPD officer Ortiz was a passenger in the police wagon. Ortiz was laughing at the plaintiffs, Mr. Tousignant and Mr. Blair as they drove to the

Worcester police station, which was located approximately one block away from the A-MEN. The driver of the van was speeding and taking sharp corners causing all four individuals, who were still handcuffed and in the van which had no seat belts, to fall into one another. Officer Ortiz and the WPD officer in the front of the wagon with him were laughing at the four men during the ride.

27. At the station, the plaintiffs were booked and charged with a number of crimes including: trespass, disorderly conduct, assault and battery on a police officer and the felony of malicious destruction of property over $250.00.

28. The plaintiffs were videotaped as part of the routine booking procedure in the Worcester Police Department along with other individuals arrested by Worcester police that day including Mr. Tousignant and Mr. Blair.

29. The video was exculpatory because it showed that within minutes of their arrests, the plaintiffs were cooperative and that they were not intoxicated. The video also proved that the injury to plaintiff Boucher's forehead was there at the time. Mr. Boucher explained what had just happened to the booking officer.

30. Before the plaintiffs' trial on the criminal charges, the video of their bookings as well as the bookings of Tousignant and Blair, were mysteriously erased from the videotape, leaving nothing more than "snow" where the bookings had previously been. All other unrelated bookings that day remained on the tape.

31. The tampering with the video occurred while the tape was in the custody of the Clerk's office after the first day of the trial against Tousignant and Blair. Defendant Towler had

testified during the first day of their trial. The tape directly contradicted parts of Towler's sworn testimony.

32. The criminal trial against the plaintiffs took place in the Worcester Central District Court on October 16, 2002. Both plaintiffs were found not guilty of all of the charges against them.

**Damages**

33. Officer Towler's use of force on plaintiff Boucher resulted in a laceration to his forehead, bruising to his sides and three injured ribs.

34. The Worcester police defendants' application of force to plaintiff King resulted in physical injury and pain.

35. The plaintiffs incurred over $10,000 in legal fees and costs associated with their wrongful criminal prosecution.

36. Each plaintiff was required to use in excess of two weeks vacation time from work to meet with defense counsel and to travel to and attend court hearings.

37. As a result of the incident, the plaintiffs endured physical pain and emotional suffering during and after the incident. They felt embarrassed and humiliated. They endured continued stress following the incident as a result of the pending unfounded criminal charges.

<u>**COUNT ONE:**</u>      <u>**42 U.S.C. §1983 FOURTH AMENDMENT CLAIM**</u>

38. The above paragraphs are incorporated by reference.

39. Defendants Peter Towler, Daniel Dowd, Thomas Dowd, Duffy, McGinn, Moore, Thomas, Falcone and Ortiz acting jointly used unreasonable and unnecessary force on plaintiffs Boucher and King and seized plaintiffs without probable cause.

40. By the actions described above, the defendants deprived the plaintiffs of clearly established and well-settled rights under the Constitution of the United States including the rights under the First, Fourth and Fourteenth Amendments.

41. The defendants acted with reckless disregard for the plaintiffs' constitutional rights.

42. As a direct and proximate result of the conduct, plaintiffs suffered the injuries described above.

**COUNT TWO:   MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. C.12, §11I**

43. The above paragraphs are incorporated by reference.

44. Defendants' conduct acting jointly deprived plaintiffs of their rights under federal and state law by threats, intimidation and coercion thereby violating the Massachusetts Civil Rights Act.

45. As a direct and proximate result of this conduct, the plaintiffs received the injuries as stated above.

**COUNT THREE:   ASSAULT & BATTERY**

46. The above paragraphs are incorporated by reference.

47. Defendant Towler committed the common law tort of assault and battery against the plaintiff Boucher.

48. Defendants Towler, Daniel Dowd, Thomas Dowd, Thomas Duffy, Edward McGinn, Moore, Thomas, Falcone and/or Ortiz committed the tort of assault and battery on the plaintiff King.

49. As a direct and proximate result, the plaintiffs received the injuries as suffered above.

## COUNT FOUR:   FALSE IMPRISONMENT

50. The above paragraphs are incorporated by reference.

51. Defendant Towler arrested plaintiffs without probable cause and caused their confinement.

52. Defendant Towler committed the tort of false imprisonment.

53. Defendant Towler did not have probable cause to arrest plaintiffs King and Boucher.

54. As a direct and proximate result of this conduct, plaintiffs suffered the injuries described above.

## COUNT FIVE:   MALICIOUS PROSECUTION

55. The above paragraphs are incorporated by reference.

56. Defendant Towler caused criminal proceedings to be instituted against the plaintiffs without probable cause and with malice as defined in state tort law.

57. As a direct and proximate result of this conduct, plaintiffs suffered the injuries described above.

## COUNT SIX: 42 U.S.C. § 1983 CLAIM AGAINST THE CITY OF WORCESTER

58. The above paragraphs are incorporated by reference.

59. The City maintained a policy or custom of deliberate indifference to supervision of police officers and a policy or custom of deliberate indifference in failing to discipline its

officers for the excessive use of force. As a result of this policy or custom, police officers in the City of Worcester knew that the excessive use of force would likely go unnoticed and/or unpunished.

60. The city acted with deliberate indifference to the constitutional rights of civilians by failing to take adequate steps to supervise and train its officers to deter the use of excessive force.

61. The city acted with deliberate indifference to the constitutional rights of civilians by failing adequately to investigate complaints of excessive force filed with Internal Affairs.

62. The policies and customs of the City of Worcester were the moving force behind the acts of the individually named police defendants and were the cause of plaintiffs' injuries.

## COUNT SEVEN: M.G.L. C.12, §11I CLAIM AGAINST BAHAMA BOB'S WORCESTER, INC.

63. The above paragraphs are incorporated by reference.

64. Defendant Bahama Bob's Worcester, Inc., which was doing business as A-MEN on December 22 and 23, 2001, employed defendant Towler, an off-duty Worcester police officer, for a private security detail at the A-MEN nightclub.

65. On December 22 and 23, 2001, defendant Towler was wearing his Worcester Police Department uniform and badge, and he was armed with his department-issued gun.

66. Bahama Bob's Worcester, Inc., paid for defendant Towler's time.

67. Bahama Bob's Worcester, Inc. hired defendant Towler, an instrument of the state's power, as a detail officer to serve its business interests at the A-MEN.

68. Defendant Towler worked under the supervision of Bahama Bob's Worcester, Inc. at the A-MEN on December 22 and 23, 2001.

69. Defendant Towler was working as an employee of Bahama Bob's, on its premises, for its private purposes. He was not under the command of a superior officer.

70. Defendant Towler was acting within the scope of his employment as a detail officer at the A-MEN (implicitly authorized by the principal to use force in appropriate situations) at all times alleged in this complaint.

71. Defendant Towler's conduct deprived the plaintiffs of their rights under federal and state law by threats, intimidation, and coercion thereby violating the Massachusetts Civil Rights Act.

72. As a private employer, Bahama Bob's Worcester, Inc. is vicariously liable for the acts of its agent, Defendant Towler.

73. As a direct and proximate result of this conduct, the plaintiffs suffered the injuries described above.

**COUNT EIGHT: NEGLIGENCE CLAIM AGAINST BAHAMA BOB'S WORCESTER, INC.**

74. The above paragraphs are incorporated by reference.

75. Defendant Towler was acting within the scope of his employment as a detail officer at the A-MEN at all times alleged in this complaint.

76. Defendant Towler was acting as a "borrowed servant" of the defendant Bahama Bob's Worcester, Inc.

77. Defendant Towler was doing business directly within the scope of Bahama Bob's enterprise.

78. Defendant Towler negligently used force on the plaintiffs.

79. Employees of Bahama Bob's Worcester, Inc. were negligent in (1) failing to properly and

adequately supervise defendant Towler; and (2) failing to properly train and instruct police officers it hired, such as defendant Towler, on how to deal with its customers.

80. As a proximate cause of this negligence, the plaintiffs suffered damages as described above.

**WHEREFORE**, the plaintiffs request that this court:

1. Award compensatory damages;

2. Award punitive damages against all individual Worcester police defendants;

3. Award the costs of this action, including reasonable attorney's fees, to the plaintiffs; and

4. Award such other and further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.

RESPECTFULLY SUBMITTED,

Howard Friedman
BBO# 180080
Myong J. Joun
BBO# 645099
Jennifer L. Bills
BBO# 652223
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100

Date: 12/21/04

11